IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| FRANCISCO GARCIA HUIZAR III | § | CASE NO. 18-52743-CAG |
| | § | |
| DEBTOR. | § | CHAPTER 7 |
| | § | |
| JAMES KEITH KING | § | |
|     CREDITOR/PLAINTIFF, | § | |
| | § | |
| v. | § | ADV. PRO. NO. 19-___ |
| | § | |
| FRANCISCO GARCIA HUIZAR III | § | |
|     DEBTOR/DEFENDANT. | § | |

**COMPLAINT TO DETERMINE
NON-DISCHARGEABILITY OF CERTAIN DEBTS
AND OBLIGATIONS PURSUANT TO 11 U.S.C. § 523(a)(6)**

Creditor/Plaintiff James Keith King ("King"), by counsel, pursuant to 11 U.S.C. § 523(a)(6) and Rules 4004, 4005, 4007 and 7001 of the Federal Rules of Bankruptcy Procedure, hereby files and brings this Complaint to Determine Non-dischargeability of Certain Debts and Obligations Pursuant to 11 U.S.C. § 523(a)(6) (the "Complaint"), and requests that the Court determine that certain debts and obligations owed by Debtor/Defendant Francisco Huizar ("Huizar") to King are non-dischargeable. In support of this Complaint, King respectfully states as follows:

**I. JURISDICTION**

1. On November 20, 2018 (the "Petition Date"), Huizar filed a voluntary petition (the "Petition") for relief under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), commencing Case No. 18-52743-CAG (the "Case").

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

3. This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b), but to the extent it is determined that this Court does not have jurisdiction over any part of this matter,

1

or that any part of this matter does not constitute a core proceeding, King consents to this Court hearing and determining the matter pursuant to 28 U.S.C. § 157(c)(2).

4. Venue is appropriate in this Court in accordance with 28 U.S.C. § 1409.

## II. THE PARTIES

5. James Keith King is a resident of North Carolina.

6. Huizar is a resident of the State of Texas with an address listed on the Petition as 1915 Sumview Bluff, San Antonio, Texas 78224.

## III. INTRODUCTION

7. King is the largest creditor of Huizar in this case pursuant to a judgment in the General Court of Justice, Superior Court Division, Durham County, North Carolina in File No. 17-CVS-2772 that was rendered on August 22, 2018 (the "Judgment"). A true and correct copy of the Judgment is attached hereto as Exhibit A. King brings this action under § 523(a)(6) of the Bankruptcy Code. For all of the grounds recited herein, Huizar's discharge should be denied because the Judgment is non-dischargeable pursuant to § 523(a)(6).

## IV. FACTUAL BACKGROUND

A. **Huizar's Extramarital Affair With King's Wife**

8. King was married to his wife, Danielle Swords King, on April 3, 2010. A former X-Games performer, King is the owner of King BMX Productions and, after their marriage, his wife assisted him in running the business. King and his wife traveled together extensively for business to host stunt shows all over the United States.

9. Between August 12 through August 23, 2015, King BMX Productions hosted a show at the Erie County Fair in New York. King's wife and their three-year old child, along with several members of King's staff, traveled with King to the show site. King left the show on

August 14, 2015 to go to Colorado for another show while his wife and other staff members remained in New York.

10. During that weekend, Mrs. King met Huizar, who was working as a marketing agent at a Geico Insurance booth. On Friday at approximately 9:00 p.m., Mrs. King requested that the child's nanny who had traveled with the family come watch the child in her room so she could run an errand to the grocery store. Mrs. King left the hotel and did not return until sometime after midnight that evening. Unbeknownst to King, the relationship between Huizar and Mrs. King began that weekend.

11. During the months of August, September, October, November and December 2015, following the New York show, Huizar and Mrs. King spent over 6,000 minutes on the telephone and engaged in text messages with each other. Huizar also rented a room at the Candlewood Suites located within one mile of the Kings' home for at least one or more nights on the following dates: August 31, 2015, September 21, 2015, October 6, 2015, October 11, 2015, November 2, 2015, November 2, 2015, November 9, 2015 and November 16, 2015. King was unaware that there was any ongoing relationship between Mrs. King and Huizar until late November 2015 when King received a Facebook message from Huizar's then current girlfriend advising him of Huizar's relationship with Mrs. King, and providing copies of phone bills evidencing the telephone calls and text messages. Mrs. King reassured King that there was no relationship with Huizar and what he had been told was not true.

12. In February 2016, Mrs. King requested as her birthday gift a spa weekend at the beach by herself. Unbeknownst to King at the time, Huizar also came to the beach and was present with Mrs. King during her birthday spa weekend purchased by King.

22407828v.3

13. When the Kings took a family beach vacation in the spring of 2016, again unbeknownst to King, Huizar rented accommodations close to the King family's accommodations so that he could meet Mrs. King during the family vacation.

14. Mrs. King signed an apartment lease with Huizar in North Carolina on or about April 4, 2016. Huizar made the necessary security deposit and down payment for the apartment rental. Huizar also made numerous purchases for the apartment. At this time, King had no knowledge of Huizar's involvement with his wife, and believed his marriage to be in good standing.

15. In June 2016, Huizar aided Mrs. King in leaving with the Kings' minor child across state lines. During this time, Huizar rented multiple hotel rooms and a rental car, and assisted Mrs. King in concealing the minor child's whereabouts from her father, King. Specifically, Huizar "stood guard" at hotel room doors to keep the minor child from King and aided Mrs. King in moving the child from hotel to hotel at night, waking the child from her sleep. Later in the summer of 2016, Huizar gave Mrs. King ultimatums to choose him or King.

16. In mid-August 2016, King began spending the night at his parents' home nearby. From mid-August 2016 until January 1, 2017, King spent nights at his parents' home, and his days and evenings at the marital home with King and their child. On January 20, 2017, Mrs. King moved into an apartment in North Carolina, which was leased by Huizar and Mrs. King and funded by Huizar. Huizar paid full rent for the apartment leased with Mrs. King and remained on the lease at least through May 2017. King and his wife remained separated for a year and officially divorced on December 15, 2017.

17. As a result of Huizar's actions, King suffered significant mental distress and post-traumatic stress disorder due to Huizar's interference in King's marriage. King had to undergo

PTSD therapy once a week for eighteen months due to Huizar's actions. He also had to engage in counseling due to Huizar's affair with Mrs. King, which was not covered by insurance.

18. Further, as a result of the affair between Huizar and Mrs. King, King BMX Production began to decline due to Mrs. King's lack of attention to the business. The number of performance days the business was able to schedule drastically decreased from 2015 to 2017 and King had to hire another employee to replace Mrs. King's work, which required King to incur expenses that he would not have had to incur otherwise.

B. **King Files North Carolina Lawsuit Against Huizar for Alienation of Affection and Other Causes**

19. King filed a lawsuit against Huizar on April 6, 2017 in which King asserted claims for Alienation of Affection, Criminal Conversation, Assault, Battery, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress (the "Lawsuit") under applicable law. The Lawsuit arose from the extramarital affair between Huizar and King's wife.

20. Huizar failed to file an answer after being appropriately served. As a result, an Entry of Default was entered.

21. On April 11, 2018, after filing an timely answer, Huizar filed a Motion to Set Aside Entry of Default. The North Carolina General Court of Justice, Superior Court Division (the "North Carolina Court") denied the request, and set for hearing the issues of damages related to King's claims on June 28, 2018.

22. In connection with the issue of damages, the North Carolina Court heard five days of evidence from the parties.

23. The North Carolina Court rendered the Judgment for $1,215,312.00 in economic damages under applicable state law to include the present value of business loss, loss of

assistance and costs not already reimbursed in the domestic suits and $1,000,000 in non-economic damages to include loss of love, affection and consortium, loss of sexual relationship, loss of society, companionship and comfort, loss of favorable mental attitude, mental anguish and decline in health and shame and humiliation for a total actual/compensatory damages award of $2,215,32.00. *See* Exhibit A, ¶ 98.

24. In the Judgment, the North Carolina Court also expressly found and determined that Huizar engaged in malice and willful and wanton conduct with the conscious and intentional disregard of and indifference to the rights and safety of others, which Huizar knew or should have known was reasonably likely to result in damage, injury, or other harm. *See* Exhibit A, ¶ 99. As a result of such conduct, the North Carolina Court rendered an award of punitive damages to King in the amount of three times the compensatory award for a total punitive damages award of $6,645,936.00. *See* Exhibit A, ¶ 100. Notably, the North Carolina Court expressly stated that the "indignity and harm done to [King] by [Huizar] in this case was great and that [Huizar's] conduct during the King's marriage was reprehensible and malicious." *See id.*, ¶ 101.

25. Finally, the North Carolina Court ordered that costs should be assessed against Huizar, including the expert fees incurred by King in connection to the lawsuit. The North Carolina Court determined the expert fees were reasonable and should be assessed as part of the costs of the action. *See id.*, ¶¶ 102, 103. The total sum in costs and expert fees determined by the North Carolina Court was $25,000.

26. The total outstanding sum of the Judgment is $8,886,248.00. After the North Carolina Court entered the Judgment on August 22, 2018, Huizar filed his voluntary petition in

bankruptcy in this Court a few months later, on November 20, 2018 seeking to discharge the Judgment.

### V. COUNT I – NON-DISCHARGEABILITY OF THE COMPENSATORY DAMAGES AMOUNT UNDER 11 U.S.C. § 523(A)(6)

27. King incorporates by reference the allegations in the foregoing paragraphs as though set out in full herein.

28. Section 523 of the Bankruptcy Code provides that:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>
> > (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

29. Pursuant to the express language of the Judgment, the North Carolina Court determined that Huizar engaged in malicious, wanton and willful behavior in interfering with King's marriage from August 2015 through the Kings' marital separation and continued this malicious, wanton and willful behavior until the parties were divorced in December 2017.

30. The North Carolina Court held that Huizar's motive in his actions was to destroy the King marriage, which he succeeded in doing.

31. The North Carolina Court further held that Huizar had no regard for the impact his actions would inevitably have on King.

32. Finally, the North Carolina Court determined that Huizar expended considerable money and effort in convincing Mrs. King to leave her marriage.

33. Under 11 U.S.C. § 523(a)(6), the compensatory damages portion of the Judgment is non-dischargeable because it represents a debt owed to King by Huizar as a result of Huizar's willful and malicious injury to King and his property. Huizar intentionally and willfully

22407828v.3

interfered with King's marriage to the detriment of King, and with an intent to maliciously injure the King family—as the North Carolina Court already found and determined.

34. King suffered damages as a result of Huizar's willful and malicious injury to his property in an amount no less than the Judgment, and the damages King suffered are a direct result of Huizar's willful and malicious injury—as the North Carolina Court already found and determined.

35. King's damages for alienation of affection, criminal conversation, assault and battery, intentional infliction of emotional distress and negligent infliction of emotional distress are closely intertwined such that one combined award of compensatory damages is appropriate and warranted.

## VI. COUNT II – NON-DISCHARGEABILITY OF THE PUNITIVE DAMAGES UNDER 11 U.S.C. § 523(A)(6)

36. King incorporates by reference the foregoing paragraphs as though set out in full herein.

37. The North Carolina Court determined that Huizar's actions were malicious, wanton and willful by clear and convincing evidence.

38. In determining the amount of punitive damages in the Judgment, the North Carolina Court considered evidence that demonstrates: the reprehensibility of Huizar's motives and conduct; the likelihood of serious harm; the degree of Huizar's awareness of the probable consequences of his conduct; the duration of Huizar's conduct, the actual damages suffered by King; any concealment by Huizar of the facts or consequences of his conduct; and the ability of Huizar to pay punitive damages.

39. Under § 523(a)(6), the punitive damages portion of the Judgment is non-dischargeable because it represents a debt owed to King by Huizar as a result of Huizar's willful

and malicious injury to King and his property. Huizar intentionally and willfully interfered with King's marriage to the detriment of King, and with an intent to maliciously injure the King family.

## VII. CONCLUSION

40. Based on the foregoing facts, and the findings and determinations based upon them in the Judgment, King requests that this Court render the Judgment non-dischargeable. Huizar indisputably engaged in willful conduct that injured King. As described herein, Huizar engaged in malicious and willful behavior through his interference with King's marriage from August 2015 through the Kings' separation, and continued his malicious and willful behavior until the Kings' divorce in December 2017. Huizar's conduct—as flatly described in the North Carolina Court's Judgment as "willful, wanton, reckless, brazen and malicious"—supports this Court's denial of discharge of the Judgment pursuant to § 523(a)(6).

## VIII. PRAYER

WHEREFORE, PREMISES CONSIDERED King prays that the Court determine that the debt represented by the Judgment is non-dischargeable under § 523(a)(6) of the Bankruptcy Code; and all other just and proper relief to which he is entitled.

Dated: February 17, 2019

22407828v.3

Respectfully submitted,

**JACKSON WALKER LLP**
112 East Pecan Street, Suite 2400
San Antonio, Texas 78205
(210) 978-7700 -- Telephone
(210) 978-7790 - Fax

*/s/ Jennifer F. Wertz*
J. Scott Rose
State Bar No. 17252800
(210) 978-7760 – Direct Dial
(210) 242-4645 – Direct Fax
Email: srose@jw.com

Amanda N. Crouch
State Bar No. 24077401
(210) 978-7784 – Direct Dial
(210) 242-4684 – Direct Fax
Email: acrouch@jw.com

Jennifer F. Wertz
State Bar No. 24072822
100 Congress Avenue, Suite 100
Austin, Texas 78701
(512) 236-2247 – Direct Dial
(512) 391-2147 – Direct Fax
Email: jwertz@jw.com

**ATTORNEYS FOR PLAINTIFF JAMES KEITH KING**

22407828v.3